862 F.2d 316
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Kanta SINGALA, Plaintiff-Appellant,
v.
ELECTROLUX CORPORATION and Al R. Lawson, Defendants-Appellees.
 No. 87-2144.
 United States Court of Appeals, Sixth Circuit.
 Nov. 23, 1988.
 
 Before WELLFORD and DAVID A. NELSON, Circuit Judges, and RICHARD B. McQUADE*, Jr., District Judge.
 PER CURIAM.
 
 
 1
 This case involves the propriety of the district court's granting a summary judgment and dismissal concerning discrimination charges under Title VII, 42 U.S.C. Sec. 1981, and state claims arising out of this wrongful discharge claim.
 
 
 2
 Defendant Electrolux hired Kanta Singala, the plaintiff, a native East Indian, in June of 1978 as a part-time salesperson at their Dearborn office. In October of 1979, Singala ceased working at the Dearborn, Michigan office and in December, she began working at the Flint, Michigan office. Singala worked at the Flint office until she was fired on March 15, 1985. From the time that she was hired, 1978, until 1982, Singala worked another full-time job and the Electrolux work was side or supplemental employment. After 1982, Singala worked only for Electrolux.
 
 
 3
 A salesperson's duties consisted of selling Electrolux products, primarily vacuum cleaners and carpet shampooers, servicing those products as required by the customers and, in the case of installment sales, assisting management in collecting outstanding installment contract accounts.
 
 
 4
 At Electrolux, a salesperson's collection rate on installment accounts is determined monthly and all salespeople are advised regarding their rates. Electrolux allegedly maintained a policy that no salesperson can win a contest or a prize based on sales if they do not maintain a ninety-two percent collection rate. Electrolux contends that 92 percent is the satisfactory rate for performance. Singala contends that the average collection rate is less than 92% and her collection rate was average among persons similarly situated at Electrolux.
 
 
 5
 For the five months preceding her termination, Singala maintained the following collection percentage rate:
 
 
 6
 November, 1984 72.7%
December, 1984 78.9%
January, 1985 84.1%
February, 1985 83.5%
March, 1985 81.8%
 
 
 7
 At least 50 of Singala's sales ended in repossession, and many of her accounts remain uncollectable. Singala was told on several occasions by her superiors that her collection rate was below acceptable standards. Although she showed some improvement over the five months in question, she was unable to increase her collection rate to 92 percent by March, 1985.
 
 
 8
 Electrolux also contends that Singala failed to bring her demonstration equipment into the office as requested. Electrolux employees in the Flint office have also complained that Singala argued with branch personnel and was frequently insubordinate. Singala contends that the complaints were attributable to her "difficulty with the English language, ... [her] ethnic origin and cultural barriers associated with [her] origin, [her] attempts to communicate and to be understood are sometimes misconstrued as 'argumentative.' ... [She] must become extra assertive in order to overcome the language barrier." Her supervisor sent her a letter advising her that her collection rate was seriously low and recommending that she contact him by March 20, 1985, to let him know what action she had taken to improve the status of her accounts. Electrolux claims that her performance did not improve, and on March 15, 1985, she was dismissed.
 
 
 9
 Singala claims that she was dismissed because of her national origin and race. After her dismissal, she filed a complaint with the EEOC, which, after an investigation and hearing by the Michigan Department of Civil Rights, concluded that Singala's dismissal was not improper and there was no indication of discrimination based on national origin or race.
 
 
 10
 Singala then filed a complaint in the Michigan Circuit Court in Genesee County, which was removed by Electrolux to federal district court. Singala alleged discrimination in violation of Title VII, 42 U.S.C. Secs. 2000(e) et seq., 42 U.S.C. Sec. 1981, and the Michigan Elliott-Larsen Civil Rights Act, M.C.L. Secs. 37.2101 et seq., and also asserted breach of an implied just cause termination only employment contract. Electrolux denied a discriminatory motive, contending that Singala was dismissed due to her poor performance.
 
 
 11
 Electrolux filed a Rule 56(c) motion for summary judgment and, after a hearing, the district court granted Singala ten days to collect all the evidence supporting her claims and present them in a supplemental response. After Singala presented a lengthy response, the district judge granted Electrolux's summary judgment motion finding that Singala failed to present evidence that she was treated differently from other similarly situated employees and, therefore, failed to present her prima facie case of discrimination. The court also concluded that Singala failed to make a prima facie case that she had a just cause employment contract because she had not shown that she had a subjective expectancy of continued employment.
 
 
 12
 Electrolux has had difficulty complying with Singala's requests to produce documents, but discovery indicated that at times Singala had an outstanding sales record during her time with Electrolux. She has won cars and trips and set sales records. Electrolux was not able, however, to produce records of Singala's performance prior to November, 1984. In addition, Electrolux was unable to produce documents regarding any other employee's collection rates from the critical time period from January, 1983 to March, 1985.
 
 
 13
 The district court may grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). See also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In Celotex, the Court stated that if the proof fails concerning an essential element of the case then there can be no material question of fact. Id. at 2553. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).
 
 
 14
 Claims of discrimination under Title VII, 42 U.S.C. Sec. 1981, and the Michigan Elliott-Larsen Civil Rights Act apply the same standards. See Daniels v. Board of Education of Ravenna City School, 805 F.2d 203, 207 (6th Cir.1986) (stating disparate treatment analysis also may be used in adjudicating race discrimination claims under sections 1981 and 1983); Murray v. Thistletown Racing Club, Inc., 770 F.2d 63, 69 (6th Cir.1985); Meeka v. D & F Corp., 158 Mich.App. 688, 692, 405 N.W.2d 125 (1987). As the district court stated, "In order to prove discrimination [under all three statutes], plaintiff must show either that the defendant intentionally discriminated against her, or that she was treated differently from those with whom she was similarly situated, making an inference of discrimination permissible." Singala v. Electrolux Corp., No. 86-CV-40451-FL, slip op. at 3 (E.D.Mich., Oct. 10, 1987). The plaintiff did not attempt to show direct intentional discrimination.
 
 
 15
 Instead, plaintiff's case is based upon circumstantial evidence and McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973), in which the Court found that intentional discrimination may be proved through circumstantial evidence. See also Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). McDonnell-Douglas provides standards by which the plaintiff may prove a prima facia case. 411 U.S. at 802. Once the plaintiff demonstrates a prima facie case, the burden shifts to the defendant to show a legitimate reason for the dismissal. Once defendant articulates a legitimate reason for its action, the plaintiff once again has the burden to show that the reason given was simply a pretext for the discrimination.
 
 
 16
 Under the McDonnell-Douglas test, as applied to discharges,[1] the plaintiff must show: (1) that she was a member of a racial minority; (2) that she was qualified for the job she was performing; (3) that she was satisfying the normal requirements of her work; (4) that she was discharged; and (5) that non-minority workers with comparable qualifications and work records were not terminated. See Flowers v. V. Crouch-Walker Co., 552 F.2d 1277, 1282 (7th Cir.1977); see also Murray, 770 F.2d at 67.
 
 
 17
 The district court concluded that the plaintiff failed to present evidence of non-minority workers with comparable qualifications who were not terminated under similar circumstances and, therefore, held that she did not establish a prima facie case. The district court also found it undisputed that Singala had a low collection rate. The trial court considered it critical for Singala to present proof that others whose job performance was comparable to Singala's were not also dismissed.
 
 
 18
 We conclude, however, that the evidence presented was sufficient to make out a prima facie case. The trial court did not explain why plaintiff's references to the three employees listed in the supplemental pleading, whose collection percentages were allegedly substantially lower than Singala's, did not constitute proof of a prima facie case. In Singala's deposition, she specifically referred to salespersons K.W. Murrey, R.E. Mohn, and S.L. Coonce, whose collection rates for January 1985 were allegedly 25, 66, and 66.7 percent, respectively. Singala's collection rate during January 1985, in contrast, was 85 percent.
 
 
 19
 In addition, the defendant for some reason was unable to produce individual employee collection records for the relevant time of January 1, 1983 through March 31, 1985. We are troubled by the defendant's inability to produce these records. Singala was able to bring about introduction of records of the entire Flint branch office regarding January 1985 through March 1985. The Flint branch office's average collection rate in March 1985 purportedly was 83.6 percent. Singala's average of 83.2 percent for the three month period of January 1985 through March 1985, was consistent with that of the twenty salespersons with whom she worked. This evidence precludes, in our view, the grant of summary judgment because it indicates some employees had collection rates lower than Singala's. This evidence also raises a question of whether the claimed 92 percent collection rate was the measure of satisfactory performance. In short, there were present material and disputed issues of fact concerning the merits of plaintiff's discrimination claims.
 
 
 20
 Al R. Lawson, an official of Electrolux admitted that collections in the Flint office were a problem. Singala's general allegation, that white employees with similar or poorer collection rates were treated differently, was supported by objective sufficient evidence to overcome defendant's motions for judgment. Lawson also stated that "if [Singala's] collections had been brought up to the minimum accepta[b]le criteria, I believe we probably wouldn't have a problem." We, therefore, find it error for the district court to have granted summary judgment.
 
 
 21
 Plaintiff should have been allowed latitude to show discrimination based on the facts available, especially when the defendant was unable to produce records which would put the question to rest. See Rohde v. K.O. Steel Castings, Inc., 649 F.2d 317, 322 (5th Cir.1981). The Flint office's average collection percentage was roughly equal to the plaintiff's collection rate. The defendant could not produce records regarding other individual employees in the Flint office who may have been compared to plaintiff with respect to job responsibilities, skills and efforts. See Rohde, 649 F.2d at 322.
 
 
 22
 Plaintiff also appeals the district court's dismissal of her state Toussaint claim. We have considered claims under Michigan's law regarding employment contracts under Toussaint v. Blue Cross & Blue Shield of Michigan, 408 Mich. 579, 292 N.W.2d 880 (1980), on several occasions. See e.g., Reid v. Sears, Roebuck & Co., 790 F.2d 453 (6th Cir.1986). The Supreme Court of Michigan recognized the general rule that "in the absence of distinguishing features or provisions or a consideration in addition to the services rendered, ... contracts [for permanent employment] are indefinite hirings, terminable at will of either party." Toussaint, 408 Mich. at 596, 292 N.W.2d at 883. The court held, however, that the general rule does not apply when the contract of employment provides that the employee may not be discharged except for cause. Though such a contract is indefinite, the requirement of cause is enforceable. A provision requiring cause for the discharge of an indefinite term employee "may become part of the contract either by express agreement, oral or written, or as a result of an employee's legitimate expectations grounded in an employer's policy statements." Id., 408 Mich. at 598, 292 N.W.2d at 885.
 
 
 23
 The trial court granted summary judgment on Singala's Toussaint claim stating that plaintiff had no "legitimate expectation" of cause for discharge "grounded in an employer's policy statements."
 
 
 24
 After reviewing the evidence, we are persuaded that "no genuine issue as to any material fact" existed regarding plaintiff's Toussaint claim. Michigan law is clear: "[A]n employee's admission that she knew that she could be dismissed with or without cause logically and legally precludes her from maintaining that she had any expectation, legitimate or otherwise, of termination only for just cause." Longley v. Blue Cross and Blue Shield of Michigan, 136 Mich.App. 336, 356 N.W.2d 20, 22 (1984). In her deposition, Singala testified that she worked only part-time and had no oral or written contract. Her understanding was that she was part-time and only full-time employees would be retained as long as they continued to make sales. Plaintiff's counsel could not cite any case in which a Michigan court has found that a part-time employee had a legitimate expectancy that she could be dismissed only for cause.
 
 
 25
 In addition, plaintiff also points to the employment manual and to two letters written at the request of plaintiff. We find that no jury could find a legitimate expectancy from the evidence submitted. The manual simply stated the guidelines for supervisor conduct. The statement in the manual could not be the basis for a "legitimate expectation" under the Toussaint rationale. The plaintiff requested letters of recommendation for the Immigration and Naturalization Service. An expectancy based on such letters written at the request of the employee does not constitute a basis for a reasonable expectancy of continued employment in our view. The letters told the Immigration and Naturalization Service only that Singala was employed by Electrolux and that she had a steady income. Nothing stated in the letter would give rise to an expectancy that plaintiff could be terminated only for cause. We find no error, therefore, in dismissal of the state claim.
 
 
 26
 For the foregoing reasons, we REVERSE and REMAND with regard to the discrimination claims, and AFFIRM with regard to the Toussaint claim.
 
 
 
 *
 THE HONORABLE RICHARD B. McQUADE, JR., United States District Court for the Northern District of Ohio, sitting by designation
 
 
 [1]
 McDonnell-Douglas, 411 U.S. at 802 applied Title VII to a charge of discriminatory promotion. Other courts, including the Sixth Circuit, have applied McDonnell-Douglas to discriminatory discharge claims. See e.g. Flowers v. Crouch-Walker Corp., 552 F.2d 1277, 1281 n. 3 (7th Cir.1977) (listing courts applying McDonnell-Douglas to discharge claims); Long v. Ford Motor Co., 496 F.2d 500 (6th Cir.1974)